Good morning, Your Honors. May it please the Court. My name is Dennis Price on behalf of the appellant in this matter. I'd like to reserve three minutes of my time for a bubble, if I may. All right. There's a clock there, and I'll have you watch as well, but I'll try to help you out. Thank you. Today's case, and in fact the next one here, is about reserving hotel rooms in compliance with the ADA. Effectively from the inception of the ADA 30 years ago, disabled hotel guests have faced booking extensively accessible hotel rooms, arriving at their destination, and finding that they're not actually accessible. The DOJ received thousands of complaints about this, and put forth some new regulations with an intention of preventing the situation. Unfortunately, some of the language that's been put forward in conflict with the statute, or the regulation that was put forward, has effectively rewound us back to the position we were before the new regulation language, and that some courts are finding that simply calling a room accessible is enough to comply with a relatively detailed language that says, the hotels must identify and describe accessible features in enough detail to reasonably permit individuals with disabilities to assess independently whether a hotel or guest room meets their accessibility needs. In short, they're not supposed to have to wait and find out if the hotel room meets their needs. This is expensive. Someone going out of town, I mean, I'm sure we've all traveled and know that if you don't have a hotel room when you get to your destination, and you find out the hotel room doesn't suit your needs, you're out of luck. And if you're a person with a disability, and you're in that same situation, and you find that the room doesn't meet your needs by the time you finally get there, you're faced with no hotel room at all. May I just ask a point of clarification, which I couldn't find in the record. This particular Marriott hotel, is it one that was built according to the 1991 standards, or was it an older hotel? Is that in the record? I don't know off the top of my head, Your Honor. I apologize. Does it matter? I don't think it does. It could matter depending on the information that was presented, but they don't present enough information for a person with a disability to make that assessment. One of the key elements that I believe is missing here is the bed. An awful lot of information, or a lot of the discussion, is turned to whether or not the word accessible is a term of art that can be referred to the regulations to determine what it means. And beds miss that key fact. And if anything, it's the most important part of a hotel room. Beds are virtually unregulated under the ADA. There's no question that they have to be accessible. This court determined that in Fortnay v. City of Lomita, everything must be accessible. But there are no standards as to what bed height is compliant. And depending on your disability, a bed that is too high or too low is no bad at all. And so simply saying you have an accessible bed is literally meaningless. Excuse me, you just said, but there are no standards. So what are they supposed to say? They apply with all applicable standards, but if there are no standards, what are they supposed to say? Are you supposed to say that they're necessarily going to have to give the bed height in inches? Yeah, I absolutely do, Your Honor. I think if there are no standards. But if there are no standards, it sounds as though that's not even in the standards as what constitutes accessible. But when we're dealing with a statute that requires that it be accessible, but if there are no standards, it sounds as though accessible is not something that requires a bed height. I don't quite get it, the combination of there being no standards, and nonetheless, they have to disclose something. Yes, Your Honor. So there are no standards as to hotels. There are standards under the 404, the Rehabilitation Act with regard to prisons. The DOJ recognizes that you need to have a bed, but disabilities, they don't come one size fits all. And so knowing the exact height of the bed would determine one person with a disability to say, well, 25 inches, that's too high for me, and another person who might have a very similar disability to be able to determine for themselves whether or not they can. The key here in the regulatory language is they'd be able to assess independently whether it meets their accessibility needs. But simply calling the bed accessible is meaningless and telling them nothing doesn't identify and describe the feature at all. And so I think we've gone too far here. The Kaiser v. Wilkie case from the Supreme Court, I think, is extremely instructive on how these cases should be interpreted. Virtually all of the courts that have interpreted the reservation rule, what I'm calling 36302E, they've avoided the Kaiser v. Wilkie test. The statute must be genuinely ambiguous, which means the court needs to actually identify the areas of ambiguity. Then they must apply statutes of canon interpretation, exhaust all the judicial tools before they look to the agency to resolve the conflict. And when they look at the agency's information, they should only interpret the agency interpretation in a way that is reasonable within the zones of ambiguity that have been identified. None of these judges, none of these courts have done that. They've simply decided that the agency determination is supreme, and that's simply what Kaiser rejected. Our deference does not give an agency the power to essentially throw out a statute and put in new language unless the statute is genuinely ambiguous. And here it isn't. If you look to the statute... If it's not ambiguous, how do we know which items must be included within accessibility? It simply says they would describe the accessible features. If there are features within the hotel room that are intended to be used by the guests, they would identify and describe those. Well, but what are those? Let's say when I go to a hotel room, I'm interested... I'm not asking when you go to a hotel room. I'm asking how do we determine as a matter of law what features are required to be accessible? Well, we look at the ADA, which says all features are required to be accessible. Everything is required to be accessible. That's the promise of the ADA. Does that include the carpet, the flooring, for example? Yes, that would have to be accessible, Your Honor. Was there anything in a hotel room that would not need to be determined to be accessible? No, I don't think anything would not have to be accessible. There are some things, however, that there would not be any variation. Generally speaking, carpets, as Your Honor noted, there's a standard, and hotels just put standard carpet throughout the entirety of the hotel. They'd be able to put that into their general information if they so choose. But that's also the kind of information that is perhaps too detailed to really be necessary. But there are certain aspects that are just mandatory. Everyone that uses a hotel room uses a bed. Everyone that uses a hotel room uses a shower. When hotels have made a decision that they want to provide a desk, the people, such as business travelers, want to make sure that some hotels choose not to have a desk, and so they wouldn't need to have an accessible one. But people with disabilities want to be able to travel the same way as people without disabilities, and they're being denied that ability because hotels are defaulting on what they were supposed to have done 30 years ago. Let me go back to my first question because if you give any deference or any value to the 2010 guidance, it makes a distinction between older hotels and the 1991 forward hotels. But you're telling me you don't know what this hotel is. I don't off the top of my head, Your Honor. The level of detail that was required wouldn't go into that distinction because it's not making a distinguishing factor between whether or not it's being held to a prior readily achievable standard or being because there is a big difference, as we all know, as a practical matter between some of these historic hotels, some of which have been retrofitted, some have not. And here it talks about older hotels needing to talk about entrances, path of travel, accessible route, etc. So I think there are some differences, and I'm trying to figure out how this case can be decided if we don't even know what the age of the hotel is. Yes, Your Honor, and I think that's one of the ambiguities presented by the hotel to the guest. If a guest is trying to make sure that they only book a hotel that's been built to the 1991 standards versus not, they have no way of deciding that. So something as simple as saying that it's been built to the 91 standards would provide substantially more information to a hotel guest than just simply saying it's accessible because the term accessible without that context is useless to the person with the disability who's supposed to be able to independently assess whether that information is adequate. What's the relevance of the provision in the 2010 guidance that says, or many individuals with disabilities may wish to contact the hotel or reservation service for more detailed information? That suggests that not every bit of information has to be on the I think Your Honor's correct. It does suggest that there's some information that is perhaps too technical or specialized to a particular individual, but I think that the other DOJ guidance that suggested that that kind of information shouldn't be necessary to make a threshold assessment of whether or not to book a hotel room. It's simply it's the type of technical levels, you know, the exact location of the grab bars, things of that sort. Those are the things that are identified as supposedly needing to be done by phone, and so that is. You've used all your time, but I will give you some rebuttal time for sure. Thank you, Your Honor. Mr. Stillman. May it please the Court, Philip Stillman for the appellee. I think Your Honor has really hit the nail right on the head on this issue of what is the required amount of disclosure. The 2010 guidance addresses that issue very specifically, and it represents a resolution of the tension between the desires of those with disabilities who are advocating a great deal of specificity and the concerns of the hotel industry that by requiring that specificity, it would in essence turn the website into an ADA accessibility survey. And that is why the DOJ, in enacting the 2010 guidance concurrently with the reservations rule, specifically said that this is not intended to be an accessibility survey. And if you take a look at the kind of list that the DOJ says may be sufficient, you're talking about those types of disclosures which are important for any person with a disability to know. Things like the number of beds, the size of beds, the type of the room, whether it's accessible, does it have a role in shower or an accessible bathtub. Because those are things that are not, I mean, you can comply with the ADA accessibility guidelines and have a role in shower or an accessible bathtub. So that's something that you would logically want to know, and it's an important feature of any hotel room. You know, I'm sympathetic to the position of your client as to where do you stop, but it would seem to me that certain things are pretty critical. If the toilet is not a standard height, that's going to cause a problem. And that's going to cause a problem for anybody for whom the standard height is necessary. How hard is it to specify the standard height? Well, I mean, it's a slippery slope issue. No, I understand. That's why I'm exactly why I'm asking this question. You want to be at one end of the slope at the far end. No, I want to be in where we have a reasonable interpretation of the reservations rule by way of the 2010 guidance, which this court has given specific deference to. And the way to address your question is, is it difficult to change or add additional information? It's a website. You can add it. It's not that difficult. The question is, and the difference between what is required by law and what a plaintiff might like to know are two different things. And so wait a minute, the statute says may reasonably. And so it doesn't mean that you can say, well, what they might like to know, they've got to call on the telephone for everything. Absolutely. Judge Fletcher, the question here is, is the information sufficient for most people who want to reserve a hotel room? Well, I think it's perfectly sufficient if it turns out the toilet is a standard height. But if it's not, it's not sufficient at all. And you're right. And that's included in the definition of accessible in both the 1991 and the 2010 ADA accessibility guidelines. So when the hotel identifies a room as mobility accessible, that by definition includes, for example, the height of the toilet, whether there are grab bars around the toilet, the clearance around the bed, all of those ADAG provisions, which encompass 250 pages of highly sometimes very hyper-technical guidelines. So the balancing of the need for disclosure and the avoiding an accessibility survey is to adopt the phrase that it's an accessible, that the room is accessible. And if there are specific requirements that a plaintiff, that a person with disabilities needs to have, that person can and is encouraged to have. And that's what the 2010 guidance says. And what do they identify as some of the examples of what type of information a potential guest might want to know about? The detailed layout of the room, the layout of the bathroom, any other specific features, maybe the width of the doors. These are the things that are suitable after a person has made a reservation. And if the have more information that is already subsumed in the ADA accessibility guidelines, they could have said that. They didn't. And for 12 years, we've had an unbroken line of silence from the Department of Justice on how this regulation should be interpreted, even though they've addressed other aspects of this regulation. And of course, the Department of Justice is presumed to the litigation ongoing and has taken litigation positions. And I think in answer to your question, one of the benefits of looking at the, for example, the Hilton consent decree that we discuss in our papers is that you have within two months of the enacting of the regulation governing the reservations rule or encompassing the reservations rule, you have a consent decree from the Department of Justice, which interprets specifically their own view for 2,800 Hilton hotels, what is required for compliance on a website. And it's not surprisingly, the exact items that are listed in the consent decree and approved by the court as reasonable are what is in the 2010 guidance. And that in an unbroken line from then to now has been the rule on what hotels have complied with that. But to go further, there's no rule that says a hotel like Marriott cannot provide more information than they're required to do. And if the court takes a look at certainly the accessibility disclosures in this case, there are 20 disclosures only related to additional burden on a person who needs much more specific information is simply therefore not required under the 2010 guidance. And I put it to you this way. There are two types of guests. Those guests who are looking to stay in a hotel and maybe aren't familiar with the accessibility guidelines. And they, for example, they see the word accessible, mobility accessible, that rings a bell to them. They know what that means. They know it means it's accessible to them. And if they have a specific requirement beyond that, they're encouraged by both the hotel in this case and by the 2010 guidance to contact the hotel and ask those things. The other type of guest is the one who's looking for access not to the hotel, but to the courthouse. And those folks, they're very familiar with the ADA accessibility guidelines. And they know for a fact that when it says accessible, that term is defined in the statute. So in the regulation, excuse me. So for those reasons, I think the current regulation and the 2010 guidance reflect a very reasoned decision by the Department of Justice in reviewing both the pros and cons of how much detail to provide, what's reasonable to require a hotel to provide as a matter of law to comply with the ADA versus something that someone might want to know. And that 2010 guidance reflects that balance between those two competing interests. So I think that in a general way, you know, when we have, when we take a look at the general requirements of the 2010 guidance, we're talking about the common sense things that people, all people with disabilities would need to know, such as number of beds, hotel amenities that are accessible, the, you know, the type of shower, those things that aren't included in the ADA accessibility guidelines. And if you take a look at the specifics of this case, going from a general policy matter to the specific of this particular case, I think the question is an easy one to answer. Marriott has since 19, I mean, since 2017 with the Barnes decision, Barnes v. Marriott Hotel Services, which Mr. Price's firm represented the plaintiff and the defendant is the same as the defendant today. Since 2017, the district courts in California have certainly applied the 2010 guidance exactly as it's been applied consistently since then. And Marriott has complied with that in spades. Let me ask you, because what is suggested here are, in addition to all the items that you laid out, the plaintiff here claims that there are at least four items that were not disclosed, such as the maneuverability clearance in the rooms, the clearance under the sink, the height of the mirror, and then the grab bar to transfer into the shower. So the question is, how does that fit within the guidance, and how would a client or customer be able to determine the availability of those items so that she could decide whether or not to stay in the room? Yes, Your Honor. It's very simple. As set forth in the Department of Justice 2010 guidance, the word accessible may be sufficient to apply to a room or even a hotel and then require the hotel to disclose those items that are not compliant with the ADA accessibility guidelines. So when you say a room is accessible, that's got a specific legal meaning, and there is no claim in this case that there is any construction-related accessibility barrier in this hotel. Mr. Love never went to the hotel. He didn't even make a reservation. So there's no allegation that, for example, when the hotel called this accessible, it isn't, in fact, accessible. And the way that the courts have applied that is, fine, if you go to a hotel room and it's not accessible in some fashion, you may have an ADA claim. Maybe as simple to resolve as calling the hotel in advance or at the time. But there is no such claim like that here. We're looking at a discrete issue of how much of that accessibility detail is required. And when you start asking what amount of ADA guidelines we need to disclose on a website, you end up with the slippery slope that I referred to. And yes, I'm at one end of that slippery slope, and I acknowledge that. The point is, where do you draw the line? There is no way to draw the line of how much detail you need to put on a website to satisfy the vast majority of customers. The DOJ has made that decision. You're also at the end of your time. You may be at one end of the slippery slope, but you're also at the end of your time. Yes, Your Honor. Thank you. Ms. Vu. Good morning. May it please the Court. My name is Min Vu, and I'm here on behalf of the American Hotel and Lodging Association. The Association thanks the Court for allowing it to participate today. This appeal and the one that comes after this one are very important to the hotel industry, which has, since 2010, diligently, in good faith, worked to comply with the directives that the Justice Department put into the 2010 guidance, as well as the Hilton Consent Decree that was entered into two months after the guidance was issued in final form. We urge the Court to reject appellants' positions in this case, because essentially, it is completely, they're completely contrary to what the DOJ guidance says. The DOJ guidance is crystal clear. It basically, and you recognized it earlier, it basically says, number one, this reporting obligation is not meant to include an accessibility survey. Two, if your hotel complies with the 1991 standards, then you need to call out, you can say that the hotel is, quote, accessible. Those are DOJ's words, not ours. And then, for each accessible room, you're going to report on the type of bed, number of beds, the number of, the type of bathing fixture, because there can be three options, and any communications features in the room. Now, to address appellant's concern, if for some reason there is an element in that room or in the hotel that is important, and it doesn't comply with the 91 standards, then hotels are supposed to call that out. Okay, so it's going to, so to your, to your question about the toilet height, for example, saying that the room is accessible means the toilet is going to be between 17 and 19 inches above the floor, and 18 inches from the side wall, and it's going to have grab bars, and it means all these things, which, by the way, would be extremely cumbersome to point out on a reservation's website. Okay, when you're looking at the room, are you really going to have, like, 20 pages worth of information? No. So that's, so that's the, that's the structure. And then, finally, the DOJ said, look, if that's not enough for you, you can call the hotel, and hotels, you'd better be ready to answer those questions. So that's the scheme. And it is not a set of musings, as appellant would suggest. No, this is a very careful and considered position by the DOJ after weighing the competing concerns. You have people with disabilities who wanted more information, and on the other hand, you have hotel companies with aging reservation systems that have capacity limits, and limits on information that it's not just a website. You also, this information gets pushed out to all sorts of places, on GDS and other systems that are limited. You know, I've got a question coming from the regulations. The regulations say that the website must, quote, identify and describe accessible features in the hotel and guest rooms offered through its reservation service in enough detail to reasonably permit the individual's disability to assess independently whether it meets his or her accessibility needs. Well, it sounds as though your position, and the position of Mr. Stillman is, all you need to do is say accessible. That this says you need enough detail. Help me understand the relationship between this part of the regulation and the position that all you need to say is that it's accessible. Well, Your Honor, the term accessible, as Mr. Stillman pointed out, is a term of art, right? It means that it already complies with the hundreds of... No, I understand that, but why then does the regulation go on to say that you've got to provide detail? Well, that is actually something DOJ interpreted that in the DOJ guidance, right? It came up with the verbiage for the regulation, and then it contemporaneously explained what it meant. So, there is, there's no need for us to basically, you know, wonder what that meant, because the DOJ said what it meant at the same time that it issued the red. And in fact, it said, it not only said what it meant, but then it basically embraced that position again two months later in the Hilton Consent Decree, which requires exactly the same kinds of disclosures that are set forth in the DOJ guidance. And it's been over a decade. The DOJ has not once, okay, in the face of 91 decisions, rejecting the appellant's position and embracing our position, has come out and said, oh no, no, we meant something else. You should have enclosed, you should have determined more. I mean, let me speak to the Kaiser v. Wilkie argument, which Mr. Price said for a moment. This guidance deserves deference, because there's no way you can tell what you're supposed to disclose when you read that regulation, okay? It is clearly ambiguous. What are you supposed to, what's the list looking at that? You can't tell, right? So, so then it's ambiguous. And the DOJ guidance, in order to meet the Kaiser v. Wilkie standard, has to be reasonable, be within the agency's realm of expertise, and has to be the product of fair and considered judgment. Well, it is reasonable, because as we've explained, we're trying to have extensive expertise in this area, and this court has actually deferred to the DOJ's guidance in the past. And there's fair and considered judgment, because they explain in the guidance the two competing considerations. Your Honor, I know I'm out of time, so I want to rest here unless you have any additional questions. It appears not. Thank you. Thank you, Your Honor. Will you please put two minutes back on the clock for Mr. Price? Thank you for the extra time, Your Honors. Mr. Stillman mentioned that there are two types of guests that take these types of rooms. In our brief, we talked about a Mr. Colston, and he was apparently one of these two types of guests. He stayed in an accessible room, and he suffered permanent debilitating injuries as a result. What they were supposed to be doing, and what they claimed they were doing, was rejecting the position that he should have to stay in the room and then sue later because it's noncompliant. He should have been able to know whether or not it was going to meet his needs when he got there, and he wasn't able to. I want to draw attention to one of the statements in the amicus. On page 11, the amicus says that this would cause all these hotels to gather all of this information, and that would be expensive and arduous. That's fundamentally inconsistent with the position taken by the amicus that all of this information could be given to them easily if they just make a phone call. If this is going to be expensive for them to go and get this information, then apparently they don't already have it. Apparently, when these individuals try to get the information, they're not going to find it. I think we have to look at the interest of the amicus and Mizzou, who I wholly respect, but she has a very big conflict of interest in this case. She's representing the defendants in numerous cases that are stayed pending appeal in this matter. There's a fundamental conflict there in not just representing the amicus, but also in representing the inherent ambiguity of these standards. I think we need to also look to this argument. I don't know that it's a conflict of interest. I wouldn't call it that. It's a fairly clear point of advocacy, I think I would call it, and that's been disclosed. Yes, thank you, Your Honors. I want to address this idea of this unbroken silence as somehow being a sentence, and the idea that this lobby can go for 10 years of not doing something, and suddenly that makes it accessible. It took 24 years for the City of Lomita case to come down and find that actually we need on-street parking to be accessible, and so I don't think this Court can simply adopt silence. I realize we're going to take you over time on the rebuttal, but I want to ask you a version of the question I've already asked. There are lots of requirements in the regulation that must be met in order for something to be accessible. Why is it not enough, because we know what those are, for the hotel to say it's accessible, and then if there are problems, there's to say it's accessible, but then say in the ways in which it is not accessible. Why is that not sufficient? Because the record before us of individuals that are dealing with that information have found that it hasn't been good enough, and this is the type of thing. Excuse me, excuse me. Hasn't been good enough in what way? And it hasn't prevented individuals with disabilities from renting rooms and then finding that it didn't meet their needs. Well, excuse me. Didn't meet their needs because it was not accessible? Because it didn't meet the requirements of the regulation? Or is something else going on? When you say it doesn't meet their needs, what do you mean? I mean that individuals have booked dispensably accessible rooms, gone to those rooms, and then found that they weren't able to utilize those rooms. And they've not been able to do so because the rooms are in fact not compliant, or because they've got needs that are not satisfied by the compliance with the standards. Both, your honor. In the Colston case that I mentioned, it was plain non-compliance. Okay, but that's a different claim, then, to say insufficient description, or to say inaccurate description. Your suit is here about insufficient description. And if accessibility has a prescribed meaning, that is to say that it complies with the regulations, that seems to me that that's full disclosure. It may or may not be accurate, but that's a different question. Well, and I think the rationale of the DOJ in saying that enough information should be given so the individual with a disability can independently assess that underscores that it's simply not enough. Accessible means a lot. Again, why is it not enough? If it's not enough because the website, because in fact the site is not accessible, that just means that it's wrong. You're saying this claim here is that I need more information about the manner in which it is accessible. You're not saying that it's not accessible. You're just saying I need more information as to what accessibility means, when in fact we have a lot of regulation that tells us exactly what accessibility means. Uh, what I'm saying, Your Honor, is it's very easy to call something accessible and we may have terms of art as to what that means, but we've already dealt with that. We had 20 years of trying that method. So would it satisfy you if instead of saying accessible, the website said ADA accessible? That is to say specifying that it complies with the law? I don't believe so, Your Honor. I think some sort of level of perhaps a reference to the particular regulation they're enough. But again, I turn to that question. But there are lots and lots of regulations. I mean, they have to list every one of them. Here we are now at your end of the slippery slope. No, Your Honor. I agree that the length of that list is ambiguous, and the DOJ said specifically they're not going to give us a list. But for the items that are identified on that list, I think it's reasonable to give enough information so the person with a disability can look at that item and say, yeah, I can use that or no, I can't use that. And what's being given now is simply inadequate. We have one case here. We have Mr. Love's case, correct? And I realize from understanding this that he's a paraplegic that uses a wheelchair, is that correct? That's correct, Your Honor. So his particular complaint, as I understand it, is that he can't look at the website and figure out if one of those rooms will work for him. Is that right? That's correct, Your Honor. And even though it says accessible, and even though accessibility is a term of art under the ADA, is his complaint that he would have to call the hotel to get further definition to see if it would work for him? His complaint is that based on his history and experience, the phrase accessible is not sufficient detail for him to be able to independently assess if he can trust the judgment of that particular hotel as to whether or not that hotel meets his needs. He's been disabled for quite some time. He's seen a lot of different implementations. I understand. We're talking about the Marriott Hotel here in San Francisco. So it seems that, to just put a fine point on what he's asking in this lawsuit, is that he doesn't feel that the term accessible and the listing that is on the website gives him enough information. Is that correct? It's that, Your Honor, as well as the fact that some of the information is just plainly inconsistent or not tailored to the particular rooms. There's a list of ostensibly available accessibility features, but they're not tied to particular rooms. And so he's not going to know on a particular room which of those he's going to get, especially when there's information. So that goes back to my first question. It appears one of his complaints is he doesn't feel he should have to call the hotel to ask. Is that right? Yes, I think that's accurate, Your Honor. And I think the DOJ recognized that that should be a last-ditch effort for particular needs, not things that a very, frankly, Mr. Love has a fairly typical version of paraplegia that is not being served by the ambiguity of these regulations. And this is a factual matter that really should be put forward so we can figure out what exactly independent means, what exactly reasonable means. We can turn to the DOJ to ask what sort of terms of art they're intending to put forward. But the courts are fundamentally aware that the word reasonable tends to have a factual meaning, and it's something that's usually submitted to a jury. I think we have your argument in mind, unless anyone else on the panel has questions? No. Thank you. I'd like to thank all counsel for your argument this morning. The case just argued of Love v. Marriott Hotel Services is submitted.
judges: McKEOWN, FLETCHER, Vratil